# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 10, 2024        Decided July 5, 2024

No. 23-3058

UNITED STATES OF AMERICA,
APPELLEE

v.

LAFONZO LEONARD IRACKS,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cr-00081-1)

———

*A. J. Kramer*, Federal Public Defender, argued the cause and filed the briefs for appellant.

*Daniel J. Lenerz*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Chrisellen R. Kolb* and *John P. Mannarino*, Assistant U.S. Attorneys.

Before: WILKINS and CHILDS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*: Appellant LaFonzo Iracks pled guilty to one count of unlawful firearm possession and one count of possession with the intent to distribute Phencyclidine ("PCP"). The District Court sentenced Iracks to 41 months of incarceration, a sentence above the applicable Sentencing Guidelines range. Iracks challenges the District Court's decision to impose an above-Guidelines sentence. For the reasons explained below, we affirm the District Court's sentence.

**I.**

Iracks was previously convicted of involuntary manslaughter and use of a firearm during the commission of a felony in Maryland. He pled guilty to both offenses, was sentenced in January 2016, and was released from prison in March 2021. In January 2022, he was caught with a firearm, PCP, and other items for the distribution of PCP. Later that year, he pled guilty to two offenses: (1) unlawful possession of a firearm by a person who was previously convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g), and (2) possession with the intent to distribute PCP, in violation of 18 U.S.C. § 841(a)(1) & (b)(1)(C).

During sentencing, the District Court had to decide which base offense level should be used for the recent firearm charge; the answer turned on whether Iracks's 2015 firearm conviction was a crime of violence.[1] The plea agreement calculated the

---

[1] A crime of violence is "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another" or "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16. Both parties agree that the

estimated total offense level and Guidelines range based on the assumption that Iracks's 2015 firearm conviction was a crime of violence, but gave Iracks the right to argue at sentencing that it did not constitute a crime of violence and thus a lower base offense level (and the resulting Guidelines range) should apply. Also treating Iracks's 2015 firearm conviction as a crime of violence, the probation office and the government recommended that the District Court apply an offense level of 21 for the 2022 firearm charge. That would have resulted in a Guidelines range of 57 to 71 months, tallying with the estimated range in the plea agreement. The probation office and the government both endorsed this Guidelines range. Disagreeing with their recommendations, the District Court decided not to treat Iracks's 2015 firearm conviction as a crime of violence. The District Court instead applied a lower offense level of 14 for the 2022 firearm charge, which resulted in a Guidelines range of 30 to 37 months.

In light of the District Court's decision to apply the lower offense level, the government revised its recommendation and requested 32 months of imprisonment. Weighing the severity of Iracks's conduct, as discussed below, the District Court departed from the government's new recommendation, varied upward from the Guidelines range, and sentenced Iracks to 41 months of incarceration and 36 months of supervised release.

Soon after deciding on the applicable Guidelines range, the District Court stated that "[t]he probation office has recommended a sentence of 64 months -- that is a *variance upward* -- of incarceration; and 36 months -- that is, 3 years -- of supervised release." A. 123 (emphasis added). Iracks's counsel clarified that the probation office's initial 64-month recommendation "was based off an anticipated higher

---

2015 manslaughter charge was not a crime of violence. The dispute is only over the 2015 firearm charge.

guidelines range of the 57 to 71 months." A. 127. The District Court responded, "Yeah. But I don't see probation coming in here recommending such significant variances very often. I took note of that." *Id.*

At the end of the sentencing, Iracks's counsel objected to the upward variance. The District Court went on to reiterate the probation office's recommendation for an upward variance:

> THE COURT: Your objection is noted for the record. I'd note that the probation office did recommend an upward variance.
>
> [IRACKS'S COUNSEL]: Well, they recommended a guidelines range and [a] within . . . guideline sentence. It wasn't an upward variance, Your Honor.
>
> THE COURT: Right. Okay. Your objection is noted for the record.

A. 144.

On appeal, neither party disputes the District Court's decision on the Guidelines range. Iracks challenges his above-Guidelines sentence on three grounds. First, Iracks asserts that the District Court erred in justifying its upward variance based on the probation office's recommendation when no such recommendation was ever made. Second, Iracks argues that the District Court's reasons for an upward variance were already accounted for in the Guidelines calculation. Finally, Iracks contends that the District Court needed to, but failed to, address his argument that his future probation revocation proceedings in Maryland support a downward variance here.

**II.**

When a defendant timely objects to a sentence, we review it for abuse of discretion. *United States v. Lawrence*, 662 F.3d 551, 556 (D.C. Cir. 2011). We first ask if the district court committed any "significant procedural error," including "selecting a sentence based on clearly erroneous facts." *Gall v. United States*, 552 U.S. 38, 51 (2007). If there is no significant procedural error, we go on to examine whether the district court imposed a substantively reasonable sentence. *Id*. We must consider "the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id*. For a sentence that is outside the Guidelines range, we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id*.

When a defendant fails to raise an objection at sentencing, however, the higher plain error standard of review applies. *Lawrence*, 662 F.3d at 556. To succeed under this standard, the defendant must demonstrate a "plain" error that affects their "substantial rights[.]" *Id*. If a defendant successfully makes this showing, we can exercise our discretion to correct "a forfeited error, but only if the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id*. at 556–57 (quoting *In re Sealed Case*, 349 F.3d 685, 691 (D.C. Cir. 2003)).

Iracks timely objected to the District Court's decision to apply an upward variance at the end of his sentencing, and so we will review the District Court's imposition of the upward variance for abuse of direction. But Iracks did not timely challenge the District Court's failure to address his argument that his future revocation proceedings in Maryland support a

downward variance. We will review this part of the appeal for plain error.[2]

**III.**

**A.**

The District Court repeatedly referenced the probation office's recommendation for an upward variance, but the probation office made no such recommendation. The sentencing transcript shows that the District Court referenced the probation office's recommendation for an upward variance during other parts of the sentencing, but not when it explained its rationale for an upward variance. Iracks argues that the District Court relied on the clearly erroneous fact—that the probation office recommended an upward variance—to impose an upward variance. The government responds that the District Court imposed an upward variance based on other reasons. Accordingly, the overarching question before us is whether the District Court imposed an upward variance due to its mistaken understanding of the probation office's recommendation. We find that the District Court did not.

For a sentence above or below the applicable Guidelines range, the Sentencing Reform Act provides that the district court must state "the *specific* reason for the imposition of a sentence different from that described [in the Guidelines,]"

---

[2] Iracks's arguments against the application of the plain error standard are meritless. Iracks argues that *United States v. Pyles*, 862 F.3d 82, 88 (D.C. Cir. 2017), stands for the proposition that the plain error standard should not apply when the District Court does not give defense counsel clear opportunities to raise objections and fails to ask defense counsel whether they had any questions or issues to raise. While good practice, *Pyles* does not require the District Court to explicitly give a defendant an opportunity to raise objections in order for us to find forfeiture later.

both orally during the sentencing and on a written form appended to the judgment. 18 U.S.C. § 3553(c)(2) (emphasis added).

Here, the District Court stated during the sentencing that an upward variance is warranted due to Iracks's "criminal history and the circumstances of this case," which involved him "carrying a gun . . . while conducting the trafficking of PCP after having been released on . . . a manslaughter charge under which [he was] still in court supervision[.]" A. 138–39. Required to specify a reason for imposing an upward variance, the District Court pointed to those circumstances in this case, not the probation office's alleged recommendation. Nor did the District Court reference the probation office's alleged recommendation as a specific reason for the upward variance in the written statement of reasons appended to the judgment, which instead stated that "the circumstances of the involuntary manslaughter offense and the seriousness of dealing Phencyclidine made Mr. Iracks's conduct more harmful than other defendants sentenced under USSG §2K2.1(a)(6)." Statement of Reasons at 3, *United States v. Iracks*, No. 22-cr-81 (D.D.C. Apr. 13, 2023), ECF No. 34. In short, we presume that the District Court did not consider the erroneous fact because the District Court did not expressly mention that fact when imposing the sentence.

We have previously said, in the context of reviewing an above-Guidelines sentence, that we "ordinarily presume a district court imposing an alternative non-guidelines sentence took into account all the factors listed in § 3553(a) and accorded them the appropriate significance." *United States v. Warren*, 700 F.3d 528, 533 (D.C. Cir. 2012) (quoting *United States v. Ayers*, 428 F.3d 312, 315 (D.C. Cir. 2005)). But presuming that the District Court *considered* all the Guidelines factors and mitigation arguments before imposing a non-Guidelines sentence is a different kettle of fish than presuming

that the District Court *relied upon* an erroneous fact, a mitigation argument, or an aggravating circumstance that was mentioned sometime during the proceeding or lurking somewhere in the record to justify a variance. For this reason, our decision to presume the former in *Warren* and *Ayers* does not conflict with our decision not to presume the latter here and in two of our prior cases. *See, e.g.*, *United States v. Ogbeide*, 911 F.2d 793, 796 (D.C. Cir. 1990) (rejecting as "speculat[ion]" the government's argument that the District Court relied upon matters discussed in prefatory remarks because "those were not among the reasons specifically given by the [district c]ourt for its upward departure"); *United States v. Brown*, 808 F.3d 865, 874 (D.C. Cir. 2015) (rejecting the government's explanation for the district court's upward variance based on matters in the record because the district court "made no mention of th[o]se considerations in its written statement").

**B.**

We next consider Iracks's argument that the District Court's reasons for an upward variance were already accounted for in the Guidelines calculation.

To justify an upward variance decision, the district court has to find that the defendant's "conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range" and "explain why the otherwise applicable Guidelines calculation 'does not fully account for the described criminal conduct.'" *United States v. Brown*, 892 F.3d 385, 404–05 (D.C. Cir. 2018) (quoting *Brown*, 808 F.3d at 867, 872 (D.C. Cir. 2015)).

The District Court has done so here. It explained during the sentencing that Iracks's "criminal history and the circumstances of this case" warrant an upward variance,

especially since Iracks's criminal history involves charges connected to a gun-related death and he committed another gun-related offense again within a year of being released from prison while he was still under court supervision for that gun-related death. A. 139; *see id*. at 138–39. The District Court was concerned that Iracks is "at a higher risk to recidivate" since his prior sentence did not deter him from committing more crimes. *Id.* at 137. In its written statement of reasons, the District Court emphasized how "the circumstances of the involuntary manslaughter offense and the seriousness of dealing Phencyclidine made Mr. Iracks's conduct more harmful than other defendants sentenced under USSG § 2K2.1(a)(6)." Statement of Reasons at 3, *United States v. Iracks*, No. 22-cr-81 (D.D.C. Apr. 13, 2023), ECF No. 34.

Despite Iracks's claims to the contrary, those factors were not already accounted for in the Guidelines calculation. The Guidelines calculation included the following: (1) seven points for Iracks's prior convictions, (2) two points because Iracks committed the current offenses when he was still under a sentence for a prior offense, (3) two points for Iracks's PCP offense because he possessed a gun while committing that offense, and (4) four points for Iracks's firearm offense because of its connection with the PCP. But the Guidelines calculation did not account for the similarity between Iracks's prior and current offenses. Focusing on the length of the prior sentence, the Guidelines calculation did not include the context that Iracks's prior offenses were connected to a gun-related death and that Iracks was convicted of a firearm-related offense again. The Guidelines calculation also did not consider how soon Iracks committed his offenses after being released from prison for his prior offenses. The Guidelines calculation simply looked at the fact that he was still under a sentence for a prior offense. The District Court could reasonably conclude there is a difference between committing additional offenses

relatively soon after being released from prison and committing them while still under supervised release, as one can be under supervised release for a long time. Here, Iracks committed his offenses less than ten months after his release. That was not accounted for in the Guidelines calculation.

Iracks further argues that the District Court's concern regarding the seriousness of his PCP-related conduct was already accounted for in the Guidelines calculation, which includes a four-point upward adjustment to the firearm count due to its connection with the PCP. But the four-point upward adjustment to the firearm count was only due to its connection to another felony offense. The other felony offense happened to be the PCP offense here. This upward adjustment was not meant to specifically account for the "danger[]" of PCP as "one of the worst drugs[,]" which the District Court stated as a reason for varying upward.

According to Iracks, the District Court's reasons for an upward variance are undercut by specific facts surrounding the manslaughter for which he was previously convicted. Iracks accidentally shot an individual during a music video production. He says that the gun that he shot the victim with was not his and that he did not bring the gun to the scene. He further explains that the victim's mother, who testified at his prior sentencing in Maryland, asked for a lenient sentence. Even if we assume that all of those facts are true, they do not negate the District Court's point that Iracks remained reckless after serious convictions. *See* A. 137 ("[H]aving been convicted of a case in which one person died, you're out here engaging in reckless and illegal and dangerous behavior, dealing PCP with a loaded gun."). The Guidelines calculation did not account for such reckless behavior, so the District Court can use it to justify its upward variance decision.

## C.

Finally, we consider whether the District Court plainly erred in "fail[ing] to consider" Iracks's argument that his future probation-revocation proceedings in Maryland, where he will face up to 11 years in prison for violating conditions of probation, warrant a downward variance here. Iracks's Opening Br. 24.

During sentencing, the District Court asked Iracks's counsel if the court in Maryland has initiated any action yet. After Iracks's counsel explained that it will happen after he serves his federal term, the District Court moved on and did not say more on this issue.

Iracks is correct that the District Court "is required to 'consider all non-frivolous reasons asserted for an alternative sentence.'" Iracks's Opening Br. 24 (quoting *United States v. Hunter*, 809 F.3d 677, 685 (D.C. Cir. 2016)). But the District Court is not required "to individually and expressly address every non-frivolous argument advanced by a defendant on the record[.]" *Pyles*, 862 F.3d at 88. Instead, it is generally presumed that "[s]o long as the [District Court] provides a 'reasoned basis'" for its sentence, it has "adequately considered all arguments" made by the defendant. *Id*. (quoting *United States v. Locke*, 664 F.3d 353, 357 (D.C. Cir. 2011)).

Here, the District Court provided a reasoned basis for Iracks's sentence and was not required to do more. While the District Court had to consider the argument that the future revocation proceedings warrant a downward variance, it did not need to explain the reason for rejecting that argument. The District Court did not say so, but it would have been reasonable for it to have concluded that a downward variance should not be based upon a future probation revocation that may never occur or a future Maryland prison sentence of unknowable

duration, even if revocation occurs. The District Court's question during the sentencing about the timing of revocation proceedings in Maryland shows that the District Court did at least consider this factor. Nothing more is required.

## IV.

For the foregoing reasons, we affirm the District Court's above-Guidelines sentence.

*So ordered.*